## Vélez *v.* Llavina.

Apelación procedente de la Corte de Distrito de Mayagüez.

No. 778.—Resuelto en junio 26, 1912.

Automóvil Particular—Empresa de Automóviles.—Para que un automóvil pueda considerarse como dedicado a una empresa de automóviles es necesario que el dueño del automóvil lo dedique habitualmente al negocio de conducir pasajeros trasportando a cualquiera que le pague el precio correspondiente, y el hecho de que el dueño alquile el automóvil de su uso particular a determinados amigos y no a cualquier persona, no lleva como consecuencia que tuviera su automóvil dedicado a la empresa de conducción de pasajeros.

Id.—Negligencia del Chauffeur—Responsabilidad del Dueño del Automóvil—Ley Aplicable al Caso.—No existiendo ley federal alguna que regule la materia de responsabilidad proviniente de culpa o negligencia, ni habiendo disposición alguna respecto a este particular en la Constitución de los Estados Unidos, es indudable que la Asamblea Legislativa de Puerto Rico, de acuerdo con las secciones 8 y 32 de la Ley Foraker, tiene poder para legislar sobre esa materia, y por consiguiente los preceptos del Código Civil Revisado que regulan esta materia son únicamente los que han de resolver el presente caso

Id.—Jurisprudencia Americana—Responsabilidad Derivada de Culpa o Negligencia.—La doctrina y jurisprudencia americana sólo son aplicables a las obligaciones nacidas de culpa o negligencia en tanto en cuanto se basan en los mismos preceptos del Código Civil de Puerto Rico, o se derivan de principios generales de derecho que no están en contradicción con dicho Código.

Obligaciones Nacidas de Culpa o Negligencia—Regla General de la Responsabilidad—Actos Propios—Actos de Otra Persona.—De acuerdo con los preceptos de los artículos 1803 y 1804 del Código Civil Revisado, la regla general es que una persona responda de los actos u omisiones propios, y la excepción a esta regla general es responder por actos u omisiones de otra persona.

Id.—Fundamento de la Responsabilidad por Actos u Omisiones de Otra Persona.—Los preceptos del artículo 1804 del Código Civil Revisado, o sea la responsabilidad por actos u omisiones de otra persona, se fundan en la presunción *juris tantum* de culpa derivada del hecho de no haber puesto el cuidado y vigilancia debida en los actos de los subordinados para evitar el daño, y por eso el último párrafo del artículo 1804 libra de responsabilidad cuando se prueba que los obligados por actos ajenos emplearon toda la diligencia de una buen padre de familia.

Id.—Responsabilidad por Actos u Omisiones de Otra Persona—Casos en que es Exigible.—La responsabilidad por actos u omisiones de otra persona sólo es exigible cuando la excepción a la regla general de que solamente responda una persona por los actos u omisiones propios, ha sido claramente

consignada en la ley, porque revistiendo esa responsabilidad en cierto modo el carácter de pena, aunque civil, debe aplicarse el principio de que solamente puede una persona ser castigada, aunque sea civilmente, cuando la ley claramente lo ha dispuesto.

Id.—Personas por las Cuales se Debe Responder—Chauffeur de un Automóvil Particular.—No hay precepto alguno en el artículo 1804 del Código Civil ni en los demás que tratan sobre esta materia, que haga responsable al dueño de un automóvil o vehículo que no esté destinado a una empresa, de los actos negligentes del *chauffeur* del automóvil o conductor del vehículo.

Id.—Ley Específica—Interpretación de Ley.—La redacción del artículo 1804 del Código Civil Revisado quita libertad a los tribunales de justicia para aplicar la responsabilidad a casos no comprendidos en dicho artículo, pues cuando una ley específica y concreta en cuáles casos debe aplicarse la responsabilidad, no puede extenderse dicha responsabilidad o otros casos distintos no comprendidos en el citado artículo, de acuerdo con el principio jurídico: *expressio unius est exclusio alterius.*

Id.—En la opinión del tribunal se discute y explica el alcance de la opinión emitida en el caso de *Marrero v. López,* 15 D. P. R., 766.

Id.—Responsabilidad del Dueño de un Automóvil Particular por los Actos Negligentes del Chauffeur.—No siendo responsable el dueño de un automóvil o vehículo particular de los actos de culpa o negligencia de su empleado como *chauffeur,* si dicho automóvil no forma parte de una empresa, y no habiéndose probado en el caso de autos que el automóvil del demandado formara parte de una empresa, no tiene el demandante causa de acción contra el demandado por los perjuicios que sufriera por los actos negligentes del *chauffeur* del demandado.

Nuevo Juicio—Descubrimiento de Nuevas Pruebas—Actividad.—Para que pueda prosperar una moción de nuevo juicio fundada en el descubrimiento de nuevas pruebas, es necesario que los *affidavits* demuestren que la parte ejercitó una actividad razonable para descubrir y presentar la prueba en el primer juicio, no siendo bastante la mera alegación de actividad.

Los hechos están expresados en la opinión.

Abogados del apelante: Sres. *José Ramón Freyre y Herminio Díaz Navarro.*

Abogados del apelado: Sres. *José de Diego y Eduardo Acuña.*

El Juez Asociado Sr. Aldrey, emitió la opinión del tribunal.

Pastor Vélez Toro demandó a José Llavina ante la Corte de Distrito de Mayagüez en reclamación de cierta cantidad como indemnización de daños y perjuicios, alegando sustancialmente como fundamento de su reclamación, que en 19 de junio de 1910 y cuando se dirigía por la carretera de Mayagüez a San Germán conduciendo de la mano un caballo, fué

arrollado por un automóvil, sufriendo en ese accidente varias lesiones; que ese automóvil pertenece a una empresa que para el servicio diario de conducción de pasajeros tiene el demandado e iba guiado por su empleado en esa empresa el *chauffeur* Juan Gonce, quien en aquellos momentos actuaba como tal empleado del demandado y dentro del límite de sus obligaciones como tal; que el expresado automóvil era conducido de una manera negligente y descuidada, siendo esto la causa del accidente, en el que no medió culpa o negligencia del demandante.

La contestación del demandado José Llavina, entre otras negaciones, contiene la de que en la fecha del accidente ni antes, tuviera empresa de automóviles para el servicio diario de pasajeros, así como que Juan Gonce fuera agente o empleado de empresa alguna; negativa que reproduce en uno de los hechos positivos de su contestación, aunque agregando que tiene un automóvil particular destinado a su propio servicio, aunque alguna vez lo cedía o alquilaba a determinados amigos, sin que ello revistiera el carácter de un servicio o negocio permanente, en cuyo automóvil emplea como *chauffeur* a Juan Gonce. También negó la culpa y negligencia que se atribuye a su *chauffeur,* así como que el demandante estuviera libre de ella.

Celebrado el juicio correspondiente, la corte de distrito dictó sentencia en 19 de agosto último declarando sin lugar la demanda, con las costas. El demandante solicitó de la corte le concediera un nuevo juicio, y de la moción que le negó esta petición, así como de la sentencia, interpuso el presente recurso de apelación.

La opinión escrita por la corte inferior expone como razón para su fallo, que la demanda está basada sin duda en el párrafo 4°. del artículo 1804 en relación con el 1803, ambos del Código Civil Revisado y que aunque el demandante alegó que el automóvil que ocasionó el accidente pertenecía a una empresa del demandado para conducción de pasajeros, sin embargo no probó que el demandado José Llavina fuera, en

la fecha del accidente, dueño o director de tal empresa, ni que Juan Gonce fuera empleado como *chauffeur* de empresa alguna.

Antes de entrar a considerar la cuestión legal que envuelve esa opinión y sentencia, y que también plantea el alegato del apelante, hemos de consignar que el demandante no presentó evidencia alguna para probar su afirmación, negada por el demandado, de que éste tenía en la fecha del accidente una empresa de automóviles para la conducción de pasajeros, que por tanto, a ella perteneciera el automóvil que causó el accidente por el que reclama el demandante, ni que Juan Gonce fuera un empleado como *chauffeur* de empresa alguna; y de la manifestación consignada por el demandado en su contestación respecto a que el automóvil que tenía para su servicio propio, lo cedía o alquilaba alguna vez a determinados amigos, sin que ello fuera un negocio o servicio permanente, no puede deducirse que tuviera la empresa a que se refiere el demandante.  Para que pudiera ser considerada como tal empresa era necesario que se dedicara habitualmente al negocio de conducir pasajeros transportando a cualquiera que le pagara el precio correspondiente, y el hecho de alquilar el automóvil de su uso particular a determinados amigos y nó a cualquiera persona, no lleva como consecuencia que tuviera su automóvil dedicado a la empresa de conducción de pasajeros.

Sentado, pues, que no está probado que el demandado tenía empresa alguna para conducir pasajeros en la fecha que ocurrió el accidente que motiva este pleito, pero reconocido que ese automóvil era de su uso particular y que estaba manejado por su empleado como *chauffeur* Juan Gonce, podemos pasar a estudiar la cuestión que antes hemos apuntado y que es la fundamental en este litigio.

El dueño de un automóvil que no está destinado a una empresa sino al servicio particular de su dueño ¿responde de la culpa o negligencia de su empleado como *chauffeur?*

Para resolver esta cuestión hemos de comenzar estableciendo primero cuál ley rige sobre la materia.

Cuando en 1898 ocurrió en esta Isla el cambio de soberanía, sustituyendo la de los Estados Unidos a la de España, teníamos un Código Civil que regulaba la materia de responsabilidad proveniente de culpa o negligencia, ya fuera ésta debida a actos propios o de determinadas personas por quienes se debiera responder.

Poco después, el Congreso de los Estados Unidos promulgó la ley generalmente conocida con el nombre de "Ley Foraker" que en su sección 8ª. declaró lo siguiente:

"Que las leyes y ordenanzas de Puerto Rico, actualmente en vigor, continuarán vigentes, excepto en los casos en que sean alteradas, enmendadas o modificadas por la presente; o hayan sido alteradas o modificadas por órdenes militares y decretos vigentes cuando esta ley entre a regir, y en todo aquello en que las mismas no resulten incompatibles o en conflicto con las leyes estatutorias de los Estados Unidos no inaplicables localmente, o con las presentes disposiciones, hasta que sean alteradas, enmendadas o revocadas por la autoridad legislativa creada por la presente para Puerto Rico o por una ley del Congreso de los Estados Unidos."

Esa misma ley por su sección 32 dispuso:

"Que la autoridad legislativa estatuída por la presente, se aplicará a todos los asuntos de carácter legislativo que no sean localmente inaplicables, incluyendo la facultad de crear, consolidar y reorganizar, según fuere necesario los municipos, y acordar y derogar leyes y ordenanzas para los mismos; y también la facultad de alterar, reformar, modificar y derogar cualquiera o todas las leyes y ordenanzas, de cualquier clase actualmente vigentes en Puerto Rico, o en cualquier municipio o distrito y que no se opusieren a lo prescrito aquí.'"

Como consecuencia de esas facultades, la Asamblea Legislativa de Puerto Rico decretó en el año 1902 y el Gobernador de esta Isla aprobó, el Código Civil Revisado, que salvo algunas modificaciones era sustancialmente el Código Civil Español; y como no existe ley federal alguna que regule la materia de daños y perjuicios entre particulares ni hay disposición alguna respecto a este particular en la Cons-

titución, tiene nuestra Asamblea Legislativa poder para legislar sobre esa materia y por consiguiente a nuestro Código Civil Revisado hemos de acudir únicamente en este caso para resolver la presente contienda; y la doctrina y jurisprudencia americana serán aplicables en tanto en cuanto se basen en los mismos preceptos de nuestro Código Civil, o se derive de principios generales de derecho que no lo contradigan.

Sentado que las leyes de Puerto Rico son las únicas reguladoras de la materia de daños y perjuicios entre particulares, diremos que aquí solamente se han publicado dos leyes sobre esa materia: una, la ley sobre responsabilidad de los patronos por accidentes que en su servicio sufran sus empleados, que no hace relación a este caso, y la otra es el Código Civil Revisado del que copiamos los siguientes artículos, que forman parte del Capítulo II, Título XVI, Libro IV, y que trata de las obligaciones que nacen de la culpa o negligencia:

"Artículo 1803.—El que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado.

"Art. 1804.—La obligación que impone el artículo anterior es exigible, no sólo por los actos u omisiones propios, sino por los de aquellas personas de quienes se debe responder.

"El padre y por muerte o incapacidad de éste, la madre, son responsables de los perjuicios causados por los hijos menores de edad que viven en su compañía.

"Los tutores lo son de los perjuicios causados por los menores o incapacitados que están bajo su autoridad y habitan en su compañía.

"Lo son igualmente los dueños o directores de un establecimiento o empresa respecto de los perjuicios causados por sus dependientes en el servicio de los ramos en los que tuvieran empleados, o con ocasión de sus funciones.

"El Pueblo de Puerto Rico es responsable en este concepto cuando obra por mediación de un agente especial, pero no cuando el daño hubiese sido causado por el funcionario a quien propiamente corresponda la gestión practicada, en cuyo caso será aplicable lo dispuesto en el artículo anterior.

"Son, por último, responsables los maestros o directores de artes y

oficios respecto a los perjuicios causados por sus alumnos o aprendices, mientras permanezcan bajo su custodia.

"La responsabilidad de que trata este artículo cesará cuando las personas en él mencionadas prueben que emplearon toda la diligencia de un buen padre de familia para prevenir el daño."

Estos dos preceptos son reproducción exacta de los artículos 1902 y 1903 de nuestro anterior Código Civil Español.

El primero de ellos establece la regla general de que se responde civilmente por los actos u omisiones *propios* en que haya intervenido culpa o negligencia.

Tratando esta materia, el ilustre comentarista, Sr. Manresa, dice al comentar el artículo 1903, que es el 1803, de nuestro actual código, lo que sigue:

"I. *Fundamento jurídico de esta clase de obligaciones.* Establece este artículo la regla general en cuanto a la imposición de las obligaciones provenientes de la culpa o de la negligencia. Traen éstas origen de un daño causado por una acción o por una omisión voluntaria, aunque ejecutado sin intención punible, y por lo tanto, el que voluntariamente ejecutó el acto generador o determinador del perjuicio, o el que incurrió también voluntariamente en la omisión que le produjo, es el llamado, en primer término, a soportar la carga o la responsabilidad de su reparación.

"Los términos de este artículo precisan y determinan con toda claridad el carácter especial de esta clase de obligaciones, que si bien en ciertos casos deben su origen a un hecho o a un acto positivo, como las que nacen de los cuasicontratos, difieren, sin embargo, de ellas en que éstas provienen de un hecho lícito y puramente voluntario, llevado a cabo por el mismo a quien se impone la obligación, mientras que en las que ahora nos ocupan lo que las origina es una acción u omisión ilícita, aunque no punible, y a veces involuntaria y hasta no personal del que ha de responder de ellas, pues, como veremos más adelante, pueden darse casos en que los actos u omisiones que produzcan el daño no sean propios del sujeto a la obligación, el cual, por determinadas razones, ha de responder de ellos porque le son imputables en cierto modo, a pesar de que en realidad no los realizó. Pero la regla establecida en este artículo sólo se refiere a la responsabilidad que se impone al obligado cuando el daño que ha de repararse ha sido causado por actos u omisiones personales del mismo, y descansa precisamente dicha regla en el principio jurídico que sirve de fundamento a toda la

teoría de dichas obligaciones, según el que todo el que causa un daño o perjuicio obligado viene a repararlo.

"Como consecuencia de ello, resulta que la única especie de culpa y omisión o negligencia que puede ser y es materia del presente capítulo, es la segunda, o sea la que sin la existencia de una obligación anterior, y sin ningún antecedente contractual, produce un daño o perjuicio que tiene su origen en una acción u omisión culpable sólo civilmente; es decir, que siendo ilícita no revista, sin embargo, los caracteres de un delito o falta por no estar penada por la ley, y aun dentro de estos límites hay que restringir aún más los términos o la materia propia de este artículo, el cual se refiere únicamente a la culpa o negligencia personales del obligado, pero no a las que provienen de actos o de omisiones de personas distintas de éste."

Es justa la disposición de ese precepto contenido en el código de que una persona responda de sus actos u omisiones negligentes, porque terceras personas no deben estar obligadas a soportar las consecuencias dañosas de la negligencia de otra.

Es, pues, la regla general que se responde por esos actos u omisiones *propios,* y si alguna vez se ha de responder por actos u omisiones *de otra persona,* esto constituirá una excepción a esa regla general. Existen en la ley tales excepciones, consistentes en hacer responsables: 1º. Por daños y perjuicios causados por las personas que el responsable tuviera bajo su custodia o dependencia; 2º. por los que causaren los animales o que él mismo tuviera para su sercivio, comodidad y recreo, o por aquéllos de que se sirviese con dicho objeto, aunque no fueren de su propiedad; 3º. por los daños que resulten por la ruina de un edificio o por consecuencia de la industria que en él se ejerciere, o por algunas otras determinadas causas; 4º. por los que se causaren por las cosas que se arrojaren o cayeren de una casa habitada o de parte de ella; pero como aparentemente pugnan con la razón natural y con el principio general de derecho de que a nadie debe hacérsele responsable de culpas de otro, de aquí que los tratadistas de derecho hayan tratado de explicar la razón de esas excepciones, exponiendo distintas teorías para justificarlas.

No nos parece propio que en una opinión escrita con el solo objeto de fundamentar una resolución judicial hagamos una exposición y crítica de todas esas diversas teorías, y por tanto, nos concretaremos a hacer una referencia breve de ellas y a determinar en cuál están basadas las excepciones que a la regla general contiene nuestro Código Civil.

Según la teoría italiana que patrocinan Giorgi, Mosca, Sechi y otros, la responsabilidad que contienen esas excepciones se funda en una presunción *absoluta* de culpa al elegir o al vigilar, y en consecuencia algunos de ellos excluyen tal responsabilidad cuando no hubo la libertad de elegir o la posibilidad de la vigilancia.

Otra teoría, la originada en los trabajos preparatorios del código francés, explicaba la razón de tal responsabilidad por otro, en el *aprovechamiento* de los servicios del empleado, de los animales o de las cosas, por ser el que producía el daño y llegaban a la conclusión de la presunción de culpa absoluta por los que estaban bajo su autoridad o dependencia; teoría combatida por Lessona y otros, fundados en que esa presunción *juris et de jure* chocaba con lo que sucede en el orden natural de las cosas según el que, en vez de descuido o abandono en la elección de los empleados o de negligencia en la vigilancia, el propio interés impulsa al hombre por regla general a escoger como empleado o dependiente al más apto y ese mismo interés se inclina a vigilarle, llegando a la conclusión de que una culpa fingida o presumida, es por lo general una injusticia.

Otros fundan la causa de la responsabilidad, ya en la relación de *autoridad* o señorío, en la *dirección* que a los principales corresponden dar a sus subordinados, en el *peligro* creciente en la actual organización de la industria, en el *interés lucrativo* y otros en la *representación,* o sea que el responsable hace jurídicamente por si lo que hace por medio de otro; por lo que el simple hecho de la sustitución lleva consigo la responsabilidad del sustituído, diciendo algunos

que la representación o sustitución es la causa de la responsabilidad.

En cuanto a nuestro Código Civil, se ha fundado en la presunción *juris tantum* de culpa derivada del hecho de no haber puesto el cuidado y vigilancia debida en los actos de sus subordinados para evitar el daño, y por eso el último párrafo del artículo 1804 libra de responsabilidad cuando se prueba que los obligados por actos ajenos emplearon toda la diligencia de un buen padre de familia, diciendo a este respecto el Sr. Manresa lo que sigue:

"Luego no es la causa de la obligación impuesta la representación, ni el interés, ni la necesidad de que haya quien responda del daño causado por el que no tiene personalidad ni garantías de solvencia para responder por sí, sino el incumplimiento implícito o supuesto de los deberes de precaución y de prudencia que imponen los vínculos civiles que unen al obligado con las personas por quienes debe reparar el mal causado. Por este motivo coloca dicha obligación entre las que provienen de la culpa o negligencia."

Si, pues, la responsabilidad por culpa de otro es una excepción a la regla general de que nadie debe responder sino por sí, y ha sido necesario que surgieran tantas teorías para justificar el castigo civil por culpa o negligencia ajena, tal responsabilidad no puede exigirse sino cuando la excepción ha sido claramente consignada en la ley, porque revistiendo esa responsabilidad en cierto modo el caracter de pena, aunque civil, debe aplicarse el principio de que sólo puede una persona ser castigada, aunque sea civilmente, cuando la ley claramente lo ha dispuesto.

Ahora estamos en condiciones de resolver la pregunta que consignamos al principio y cuya contestación resuelve este pleito.

Concretando la cuestión ahora a responsabilidad por actos ajenos, el artículo 1804 que hemos transcrito, contiene en su primer párrafo la confirmación del artículo anterior de que se responde por actos propios, y además la regla de excepción de que se responde por algunas terceras perso-

nas, al decir que se responde por "aquellas personas de quienes se debe responder." Después de leer esto surge enseguida mentalmente esta pregunta ¿de qué personas se debe responder?

Desde luego que al decir la ley *"de quienes se debe responder"* es porque hay responsabilidad solamente por actos de *algunas determinadas personas,* y por tanto, tal determinación debe ser hecha por la propia ley. Y así es en efecto, pues a continuación de ese primer párrafo vienen otros más en los que va estableciendo que el padre y en su caso la madre, responden por sus hijos menores de edad, los tutores por sus pupilos, etc. Tales apartados hacen una enumeración de casos de responsabilidad por actos u omisiones ajenos, pero no encontramos en ella que el dueño de un automóvil o vehículo que no esté destinado a una empresa, debe responder por los actos negligentes de su empleado.

La redacción de todo ese artículo quita libertad a los tribunales de justicia para aplicar la responsabilidad a casos no comprendidos en él, ya que cuando una ley especifica y concreta en cuáles casos es aplicable, no puede extenderse a otros distintos no comprendidos en ella de acuerdo con el principio jurídico *"Expressio unius est exclusio alterius."*

Todos los casos de responsabilidad, estan comprendidos en el capítulo a que nos hemos referido, respecto del cual dice el Sr. Manresa lo siguiente, en la página 606 de sus Comentarios, que con satisfacción hemos citado varias veces:

"\*   \*   \*   pueden darse además casos en que la acción u omisión determinante o productora del daño o perjuicio no se realice por la misma persona, que queda sujeta a la obligación, sino por otras distintas ligadas a ella por vínculos tales que la conviertan en responsable legal de esos hechos que en realidad no ejecutó, y aun puede provenir también de otras causas extrañas por completo a su voluntad el mal que haya de ser reparado por él, por cuyo motivo ha tenido que consignar la ley las normas reguladoras de dichos supuestos, constituyendo su respectiva reglamentación el objeto exclusivo de los presentes artículos y de los restantes de este capítulo."

Así, pues, como entre los casos especificados en el artículo 1804 del Código Civil Revisado no se hace responsable al dueño de un automóvil o vehículo por actos de culpa o negligencia de su empleado como *chauffeur,* si no forma parte de una empresa, y esto último no se ha probado, hemos de concluir que el demandante no tiene causa de acción contra José Llavina, dueño del automóvil destinado a su servicio particular, que guiado por el *chauffeur* Juan Gonce, causó los daños de que se queja Pastor Vélez Toro.

Los tribunales no somos legisladores y sin embargo, nos atribuiríamos esas funciones si hiciéramos responsables a personas a quienes la ley no impuso responsabilidad. Si es conveniente y necesario en vista de los inventos recientes y de las desgracias que ocasionan, que los dueños de automóviles u otros aparatos no destinados a empresas respondan también por sus empleados, es esta misión para nuestra Asamblea Legislativa y no para nosotros. Nos toca solamente aplicar la ley tal cual es, y si su estricta aplicación descubre algo que la ley no ha previsto, servirá ello de saludable aviso a los legisladores.

Esta es la primera vez que esta cuestión ha sido planteada directamente para su resolución ante este Tribunal Supremo, pues si bien en el caso de *Marrero* v. *López et al.,* 15 D. P. R., 766 existía una cuestión análoga porque se reclamaba indemnización contra Antonio López Martínez por actos de culpa de su mayordomo Nicomedes López, quien también fué demandado y condenado a indemnizar, sin embargo, en ese caso el principal Antonio López fué absuelto de la reclamación y la única cuestión que se planteó fué si su mayordomo había o nó obrado dentro del ejercicio de sus funciones cuando realizó el acto, por el que se reclamaba; esa fué la única cuestión resuelta por dos de los jueces de esta Corte Suprema, ya que los otros opinaron que por falta de exposición del caso nada había que considerar y no se discutió ni resolvió si el principal es responsable por actos de su mayordomo.

Después de lo expuesto es innecesario que consideremos la evidencia presentada en este caso respecto a la culpa o negligencia con que actuara el *chauffeur* Juan Gonce, ya que poco importa al principal José Llavina, único demandado en este pleito, que su *chauffeur* fuera negligente o nó, pues no ha de responder de sus actos.

Por los mismos motivos, es inútil que consideremos los distintos errores alegados por el apelante referentes a la evidencia, y sólo nos ocuparemos del que puede tener relación con el caso desde el punto de vista que lo consideramos, siendo él, si debió concedérsele al demandante un nuevo juicio para probar que el demandado era dueño de una empresa de automóviles, tal como había alegado en su demanda.

La petición en ese particular fué basada en el descubrimiento de nuevas pruebas que el solicitante estimaba importantes, y como justificación se acompañó a la solicitud de nuevo juicio, dos declaraciones juradas de Simón Carlo y Eduardo Riera.

El nuevo juicio por ese motivo fué propiamente denegado, por que no se demostró actividad alguna por parte del demandante para obtenerla antes del juicio; y además, consta de los autos que ambos testigos estaban presentes en el tribunal y fueron presentados por el demandante para probar otros hechos que él estimó necesarios para su caso, pero que fueron rechazados. Sus declaraciones en lo que atañe a las cuestiones planteadas en sus *affidavits* no fueron propuestas, ni se ha justificado que el demandante no supiera que ellos podían haber declarado sobre tales hechos; ni siquiera se ha demostrado que fueran interrogados acerca de tales hechos..

Existe una carencia absoluta de actividad cuando debió haber ésta quedado demostrada afirmativamente.

"Los *affidavits* deben demostrar que la parte ejercitó una actividad razonable para descubrir y presentar la prueba en el primer juicio." (*Stoake* v. *Monroe*, 36 Cal., 388.)

"No es bastante con la alegación de actividad, sino que es necesario demostrar que se ejercitó para descubrir la prueba y presentarla en el acto del juicio." (*Jacks* v. *Cooke,* 6 Cal., 164. *Von Glahn* v. *Brennan,* 81 Cal., 261. *Heintz* v. *Cooper,* 104 Cal., 688.)

Por las consideraciones expuestas la sentencia que declaró sin lugar la demanda debe ser confirmada.

*Confirmada.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados Wolf y del Toro.

Juez disidente: Sr. MacLeary.

VOTO PARTICULAR EMITIDO POR EL JUEZ ASOCIADO SR. MACLEARY.

Habiéndoseme entregado en primer término los autos de este caso como ponente, redacté una opinión que sometí a la consideración de todo el tribunal para que fuera adoptada como opinión de la corte. Y no estando conforme con ella, el tribunal comisionó a otro juez para que redactara la opinión de la mayoría; por consiguiente utilizaré la mía como base de mi voto particular.

Sin embargo, ella solamente servirá como elemento primordial, pues será necesaria la consideración de otras cuestiones para que el trabajo quede completamente terminado.

No estando conforme en el presente caso con mis colegas en cuanto a la consideración que han hecho de la ley aplicable al mismo, me veo obligado a disentir y creo que debo expresar con alguna extensión las razones que tengo para ello. Estas son las siguientes:

El presente es un pleito en reclamación de cierta cantidad por daños y perjuicios sufridos con motivo de lesiones personales.

Aparece de los autos que en 19 de junio de 1910 el demandante Pastor Vélez Toro que se dirigía por la carretera cerca de Mayagüez conduciendo de la mano un caballo, fué arrollado por un automóvil que pertenecía al demandado

José Llavina, el cual era guiado por el *chauffeur* llamado Juan Gonce, empleado del demandado. El demandante recibió varias heridas como resultado de dicho choque, que le obligó a permanecer en el Hospital de San Antonio, de Mayagüez, por espacio de 25 días, y 12 días más en una casa particular. Alegó y probó el demandante que sufrió dolores físicos y perturbación mental; que quedó incapacitado para escribir y perdió su empleo, sufriendo por ello perjuicio.

Celebrado el juicio, que tuvo lugar en el mes de agosto, la Corte de Distrito de Mayagüez dictó sentencia contra el demandante por las razones consignadas en la opinión que se encuentra en los autos, la cual es como sigue:

"El presente es un pleito sobre indemnización de daños y perjuicios que alega el demandante sufrió a consecuencia de haber sido arrollado por un automóvil de la propiedad del demandado José Llavina, cuyo vehículo era conducido en el momento del accidente por el *chauffeur* Juan Gonce.

"La demanda en este caso se presentó, sin duda alguna, basada en el párrafo 4º. del artículo 1804, en relación con el 1803, ambos del Código Civil Revisado.

" 'Artículo 1803.—El que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado.

" 'Artículo 1804.—La obligación que impone el artículo anterior es exigible, no sólo por los actos u omisiones propios, sino, por los de aquellas personas de quienes se debe responder.

" 'Lo son igualmente los dueños o directores de un establecimiento o empresa respecto de los perjuicios causados por sus dependientes en el servicio de los ramos en los que tuvieran empleados, o con ocasión de sus funciones.'

"El demandante, entre otros hechos, alegó: 'Que con anterioridad y en la fecha del accidente que motiva este pleito, el demandado era dueño de una empresa de automóviles, con licencia expedida por el Comisionado del Interior, que hacían viajes diarios entre Mayagüez y San Germán, estando el manejo y dirección de dichas máquinas para conducir pasajeros y otros fines, a cargo del *chauffeur,* Juan Gonce, empleado o agente del demandado, con autoridad para hacerlo  *  *  *; y que cuando ocurrió el accidente, el *chauffeur,* Juan Gonce, se encontraba desempeñando uno de los actos para el cual fué

empleado por el demandado en este caso; esto es, el *chauffeur,* Juan Gonce, estaba actuando dentro de los límites de su ocupación o empleo, por mandato expreso o tácito de su principal, José Llavina.'

"El demandado negó todos los hechos esenciales de la demanda; y, además, alegó otros hechos positivos en su contestación."

Al examinar los autos no puede hacerse caso omiso del hecho de que si bien se ha tratado de hacer una relación de las alegaciones en esta opinión de la corte sentenciadora, ella no es completa y razonable, rechazándose cualquier parecer acerca de los mismos, con excepción del de la parte demandada. Teniendo esto presente seguiré citando de los hechos declarados probados por la corte sentenciadora, a saber:

"Como resultado de la evidencia introducida en el juicio, la corte declara probados los siguientes hechos:

"Que el día 19 de junio de 1910, en la carretera de Mayagüez a San Germán, el demandante Pastor Vélez sufrió injurias en su persona, producidas por un automóvil que conducía el *chauffeur,* Juan Gonce, a consecuencia de cuyas injurias necesitó asistencia médica y estuvo enfermo y recogido en un hospital próximamente veinte y cinco días. Aparece probado que el sitio donde ocurrió el accidente no forma parte de la zona urbana de Mayagüez. No aparece probado que el demandante, a consecuencia de las injurias recibidas, haya quedado inútil del brazo y pierna del lado derecho, ni que, por tanto, haya quedado inútil para el trabajo. Aparece, también, probado que el automóvil que motivó el accidente, era de la propiedad del demandado José Llavina y que no prestaba en ese día servicios de trasporte de pasajeros, sino que lo traían a Mayagüez (enviado por su dueño), para hacerle reparaciones, y que lo conducía el *chauffeur,* Juan Gonce.

"A la corte parece muy difícil—si no imposible—que el accidente haya ocurrido en la forma que han declarado el demandante y los testigos del mismo que declaran haberlo presenciado. La corte da entero crédito a la declaración del mecánico, Agustín Fábregas (testigo del demandante).

"La corte declara que no se ha probado que el demandado Llavina, fuera dueño o director en la fecha del accidente, de una empresa de automóviles dedicados al servicio de trasporte entre Mayagüez y San Germán, ni mucho menos que Juan Gonce estuviera, entonces y allí, empleado en el servicio de tal empresa ni desempeñando ninguna función de *chauffeur* relacionada con dicha empresa.

"Por las razones expuestas, la corte es de opinión que debe dic-
tarse una sentencia declarando sin lugar la demanda con las costas
al demandante. Mayagüez, P. R., agosto de 1911. Firmado: D.
Sepúlveda, Juez del Distrito."

Debe notarse de paso, que todos los errores, si es que así
fueron, de la corte sentenciadora, los aprobó y adoptó la
opinión de la mayoría de esta corte, y puede considerárseles
en la misma discusión general. El propósito es dar cumpli-
miento a ese deber con la mayor cortesía, sin perder jamás
de vista por un solo momento, el alto concepto en que tiene
el que suscribe a sus colegas y a las opiniones de los mismos
en cuestiones de ley.

No solamente no estoy conforme con la opinión de la corte
sentenciadora, sino tampoco con la apreciación hecha por los
distinguidos abogados que formularon argumentaciones ora-
les en este caso durante la vista en la corte de apelación. No
estoy completamente seguro de cuál haya sido la actitud legal
asumida por el abogado de la demandante que estableció el
pleito y asistió a la celebración del mismo en la corte senten-
ciadora. La opinión que he formado del caso está fundada
en los hechos según han sido alegados y probados y de la
jurisprudencia aplicable a los mismos, según la consideración
que de la misma he hecho.

Después de limitar las alegaciones al hecho de que el
demandado era dueño de una empresa de automóviles y a
haberse demostrado la falta de evidencia para probar esta
alegación, la resolución del caso se funda en la interpretación
que se ha dado a las dos únicas secciones de nuestro Código
Civil. Esta consideración hecha de las alegaciones y prueba,
(*allegata* y *probata*) así como de la ley y de los hechos, resulta
ser completamente muy limitada.

Me parece que tomando en consideración la opinión de la
corte sentenciadora y la sentencia dictada de conformidad
con la misma, que el juez de distrito formó una opinión
errónea de la responsabilidad que tiene un dueño de un auto-
móvil por los accidentes que ocurran en los caminos públicos

de esta isla.   El limita la responsabilidad del dueño del vehículo con motivo de la negligencia del *chauffeur,* a aquellos demandados que son ''dueños o directores de un establecimiento o empresa,'' según se determina en el párrafo 4º. del artículo 1804 del Código Civil.   En este punto, dicho juez está sostenido por la opinión de esta corte, pero a mi juicio, ésta es una limitación que no está sostenida por una interpretación debida de la ley.   El artículo mencionado define la responsabilidad y la fija no solamente por actos propios sino también, si se interpreta debidamente, por los de aquellas personas de quienes se debe responder, según se determina en el artículo siguiente.   La responsabilidad general la determina el artículo 1803 del Código Civil que ha sido citado por el juez sentenciador en su opinión.   El ilustrado comentarista Español Sr. Manresa, hace el siguiente comentario al tratar de la responsabilidad de patronos, por los actos de sus empleados:

''Por la misma razón, aquel que por su industria, por su profesión o por otras circunstancias, tuviere alguna otra persona a su servicio o bajo su dependencia o custodia,   *   *   *   debe exigir de ella que cumpla su cometido con la actividad y diligencia necesarias; y si por faltar a éstas diere origen a un perjuicio, deben venir obligados a indemnizar al perjudicado aquel que tuviera a su servicio o bajo su vigilancia al que causó el daño, ya por no haber tenido el debido celo en la inspección de los actos de sus dependientes o subordinados, ya porque careciendo éstos, por regla general, de los medios de indemnizar personalmente, no es justo que el que sufre un daño por causa de otro se vea privado de acción suficientemente eficaz para reclamar su reparación, etc.''   (12 Comentarios de Manresa, 608 y 609.)

''La responsabilidad impuesta por el artículo 1903 (que es idéntico al artículo 1804 de nuestro Código) a los que deben responder por otras personas, no es subsidiaria sino directa, como lo exige la causa que la motivó; y la establece la ley por razón del incumplimiento de los deberes que imponen las relaciones especiales de autoridad o superioridad que median entre el que ha de reparar el daño y el que dió motivo a él con sus actos u omisiones.''   (12 Comentarios de Manresa, 611 y 612.)

El mismo ilustrado autor, al hablar de la responsabilidad de los propietarios por los daños causados por los animales realengos que penetran en otras propiedades, se expresa como sigue:

"De aquí que en vista de esa imposibilidad, (significando imposibilidad para dominar el instinto de los animales) se suponga que aquel que posee o usa un animal por una razón de necesidad, o para su comodidad o recreo, se somete desde luego por el mero hecho de su posesión o uso a todas las eventuales consecuencias y a todos los daños ulteriores que pudieran sobrevenir, aceptando asimismo implícitamente por virtud de ese hecho la responsabilidad consiguiente, lo cual presupone la existencia de un consentimiento presunto o de un consentimiento tácito, por parte del poseedor o usuario del animal que ocasionó el daño, con la obligación de responder del mismo.

"De este modo suponen que debe entenderse en las acciones noxales la máxima por algunos combatida *cujus commoda eius incommoda, nam commoda et incommoda inter se reciprocantur,* pues aun cuando el daño no puede calificarse *stricto jure* como una secuela directa de la propiedad o del uso, es siempre su consecuencia indirecta y mediata, la cual debe explicarse por el principio *causa causae est causa causali,* cuando quiera determinarse la razón de la responsabilidad." (12 Comentarios de Manresa, 621 y 622.)

El ilustrado Comentarista continúa, además, expresándose como sigue:

"* * * En efecto, el espíritu del artículo 1905 (que es idéntico al artículo 1806 de nuestro código), es bien perceptible, y explícito resulta de los propios términos del mismo. Castígase en él la culpa o negligencia del que, pudiendo y debiendo evitar las consecuencias del uso o empleo de los animales, no lo evita por no adoptar los medios de previsión convenientes y adecuados a dicho fin, o porque, aun adoptándolos, no pudo conseguirse dicho resultado, por deber imputarse a sí mismo el riesgo que puede sobrevenir de utilizarlos, toda vez que al valerse de ellos acepta voluntariamente por ese hecho la responsabilidad de las consecuencias que puedan derivarse de él.

"En su virtud, siempre que el daño que se produzca sea una consecuencia propia y natural de la utilización del animal damnificador, independiente de toda intervención extraña o de cualquiera otra causa no imputable al poseedor o al que hace uso de él, deben éstos soportar dicha consecuencia reparando el daño causado, hubiera o

nó negligencia o falta de cuidado, porque al tener en su poder dicho animal, o al usarle, ya sabían a lo que podían exponerse.'' (12 Manresa, 626 y 627.)

Hemos también citado esta misma opinión de Manresa en el caso de *Redinger* v. *Crespo,* resuelto por este tribunal el día 8 de marzo último, y es de tanta aplicación a este caso como a aquél. El principio fundamental es indéntico que el del caso presente, o por lo menos enteramente análogo; la responsabilidad de un patrono por los actos negligentes de sus empleados realizados en el ejercicio de sus obligaciones y dentro de su empleo.

Manresa claramente reconoce de este modo la aplicación de la doctrina *respondeat superior.*

Otros autores sobre ley civil expresan claramente que uno de los fundamentos de la responsabilidad que tiene una persona pór las faltas cometidas por otra, proviene con motivo de la relación de representación, o sea que la persona que queda hecha responsable jurídicamente ejecuta por sí lo que hace por medio de otra persona; y por consiguiente, que el mero hecho de la sustitución lleva en sí la responsabilidad de la persona sustituída, o el principal; y se ha declarado por algunos de los mismos que la representación o sustitución es la que origina la responsabilidad. Esta es, en efecto, la doctrina de *respondeat superior* enunciada por los reconocidos jefes del pensamiento Europeo sobre esta materia.

En el caso de *Marrero* v. *López,* publicadó en el Tomo XV de las Decisiones de Puerto Rico, 766-776, si bien la opinión de este tribunal estuvo dividida acerca de una cuestión de procedimiento, quedó reconocido implícitamente por toda la corte, que un principal o patrono es responsable por los perjuicios causados por sus sirvientes o empleados mientras actúan dentro del alcance de sus obligaciones y en el ramo del negocio de su patrono, y que la doctrina *respondeat superior* está en vigor en esta isla con arreglo a la enteramente armoniosa autoridad de la jurisprudencia así española como americana.

Nuestra jurisprudencia americana en cuanto al principio de *respondeat superior* está en armonía con la española acerca del particular y se encuentra expresada de modo claro en el tomo 34 de Cyc., a saber:

"*Respondeat Superior.* Significa literalmente: 'que responde el principal.' Es una regla general que impone al principal la responsabilidad por la negligencia de su dependiente en el negocio de su patrono que cause perjuicio a terceras personas, y fundado en este principio, que aquel que espera obtener ventajas de un acto realizado por otro a nombre suyo, debe responder de cualquier perjuicio que sufra una tercera persona." (Véase 34 Cyc., págs. 1673 y 1674, y las notas 97 y 98, y casos citados en las mismas; véase también Máximas Legales de Broom, 843.)

La máxima *respondeat superior* (o que el principal quede sujeto a responsabilidad), es equivalente a "*qui facit per alium facit per se*" (cualquiera que ejecuta un acto por medio de otro, lo hace por sí). La primera es aplicable a cuestiones de perjuicios y la segunda a cuestiones sobre contratos. (Máximas legales de Broom, 816 y 843.)

La doctrina de *respondeat superior* ha sido claramente expresada por el Dr. Broom en el siguiente inequívoco lenguaje:

"El principio por virtud del cual un principal es responsable en términos generales por los accidentes provenientes de la negligencia o impericia de su dependiente es que el acto de su dependiente es en realidad su propio acto. Si el mismo principal va guiando su coche y por falta de habilidad causa daño a un viandante, él es desde luego responsable de esa falta de habilidad. Pero si en vez de guiar el carruaje con sus propias manos él emplea a su dependiente, para que lo haga, éste no es sino un instrumento que actúa por el principal. Era el deseo de dicho principal que su dependiente guiara el coche, y cualquier cosa que ejecute dicho dependiente para cumplir la voluntad de su principal, puede considerarse por los demás como el acto del principal, '*Qui facit per alium, facit per se.*' Siendo la regla general que 'un principal es responsable por todos los actos ejecutados por su dependiente en el curso de su empleo, aunque los haya ejecutado sin haber recibido orden especial'; aun cuando haya estado ocupado en un negocio particular de él con tal que al mismo tiempo haya estado ocupado en general del de su principal. Los medios

aplicables para determinar la responsabilidad del principal son los siguientes: ¿Se encontraba el empleado 'en el servicio de su principal cuando se cometió el daño? ¿Estaba él autorizado por su principal para ejecutar el acto que se denuncia? 'El principal,' dice Maule, J., 'es responsable aun cuando el dependiente en el ejercicio de su obligación sea culpable de haberse separado un tanto o dejado de ejecutar dicha obligación de la manera más estricta y conveniente.' * * *.'' (Máximas Legales de Broom, 846 y 847.)

Es evidente que la consideración hecha por la corte sentenciadora fué enteramente demasiado restringida. Pero ¿se limitó él en vista de las alegaciones, a formar esta opinión solamente? Creo que no. Aunque se alega en el párrafo 2º. de la demanda que el demandado es dueño de un establecimiento o línea de automóviles que hacía viajes diarios entre la ciudad de San Germán y Mayagüez, sin embargo, en el párrafo 4º. se determina de modo suficiente la alegación por la que se declara la responsabilidad del demandado aun cuando la alegación acerca del establecimiento, empresa o línea, contenida en el 2º. párrafo fuera eliminada o no hubiera sido probada. Por consiguiente, no debió la corte sentenciadora fundar su decisión en este punto solamente como ocurrió en este caso. Este tribunal no debe seguir a la corte inferior al no tomar de tal modo en consideración una alegación contenida en la demanda.

Antes de pasar más adelante a examinar los autos, convendría quizás analizar la actitud asumida por el ilustrado y distinguido abogado del demandado en la que fué secundado casi enteramente por la corte sentenciadora y por la mayoría de la corte de apelación.

Se alega por el apelado ante este tribunal que este caso debió resolverse fundado únicamente en los artículos 1803 y 1804 del Código Civil de Puerto Rico, que han sido copiados del Código Civil Español, artículos 1902 y 1903, a saber:

"Artículo 1803.—El que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado.

"Artículo 1804.—La obligación que impone el artículo anterior es exigible, no sólo por los actos u omisiones propios, sino por los de aquellas personas de quienes se debe responder.

"El padre y por muerte o incapacidad de éste, la madre, son responsables de los perjuicios causados por los hijos menores de edad que viven en su compañía.

"Los tutores lo son de los perjuicios causados por los menores o incapacitados que están bajo su autoridad y habitan en su compañía.

"Lo son igualmente los dueños o directores de un establecimiento o empresa respecto de los perjuicios causados por sus dependientes en el servicio de los ramos en los que tuvieran empleados, o con ocasión de sus funciones.

"El Pueblo de Puerto Rico es reponsable en este concepto cuando obra por mediación de un agente especial; pero no cuando el daño hubiese sido causado por el funcionario a quien propiamente corresponda la gestión practicada, en cuyo caso será aplicable lo dispuesto en el artículo anterior.

"Son, por último, responsables los maestros o directores de artes y oficios respecto a los perjuicios causados por sus alumnos o aprendices, mientras permanezcan bajo su custodia.

"La responsabilidad de que trata este artículo cesará cuando las personas en él mencionadas prueben que emplearon toda la diligencia de un buen padre de familia para prevenir el daño."

No es necesario hacer cita alguna de la Ley Orgánica de Puerto Rico para probar que estos artículos están aún en vigor en esta isla. Esto se ve claramente al examinar los artículos 8 y 32 de la Ley del Congreso, girando este caso sobre la interpretación que ha de darse a los artículos mencionados de nuestro Código Civil. Se trata de interpretar de tal modo estos artículos que aparezca de los mismos una contestación negativa a la pregunta: "¿Es responsable el dueño de un automóvil que no está dedicado al negocio de una empresa sino que está al servicio particular de su dueño, por la falta o negligencia de su empleado?" El apelado funda todo su caso en esta proposición y en esta contestación negativa está él sostenido por la mayoría de esta corte. Desde luego, que estos artículos deben interpretarse al igual que otros estatutos de conformidad con la bien conocida regla

establecida en tales casos, la que, con el fin de llegar a una
conclusión correcta debe ser examinada con más o menos
cuidado. Los principios de interpretación son universales y
se aplican a todos los instrumentos escritos. Ellos afectan
a todos los estatutos cualesquiera que hayan sido los con-
gresos, parlamentos, cortes o legislaturas que los hayan apro-
bado. Se fundan en la razón solamente, como las matemá-
ticas, y son aplicables de conformidad con los principios
inexorables de la sana lógica. Los artículos citados forman
parte del capítulo 2º. del Título XVI. Este título trata de
"Las obligaciones que se contraen sin convenio"; o sea, de
los "Cuasi-contratos." El capítulo hace referencia más es-
pecíficamente a las obligaciones "que nacen de la culpa o
negligencia." Desde luego, que según la bien conocida regla
de interpretación de estatutos, para que pueda fijarse la inten-
ción de la legislatura, debe considerarse todo el estatuto. (1
Federal Statutes Annotated XXVI y casos citados.) Por
tanto, veamos el artículo 1805 que dice, "El que paga el daño
causado por sus dependientes, puede repetir de éstos lo que
hubiese satisfecho." El principal ocupa el mismo sitio que
un fiador en un pagaré. El es responsable en primer término,
pero tiene el derecho de recobrar de la parte por cuyos actos
se le hace responsable. La doctrina de *respondeat superior*
ha sido reconocida claramente en este artículo y no puede
ignorarse.

Alega el apelado que el texto del artículo 1804 del Código
Civil limita la facultad de las cortes para aplicar la respon-
sabilidad del principal a los casos que no se especifican en
dicho artículo, y que este artículo del estatuto limita el ante-
rior, con arreglo a la aplicación de la máxima *"Expressio
unius est exclusio alterius."* Examinemos previamente las
autoridades en relación con esa máxima y a la fuerza que
debe dársele a la misma.

En el Diccionario de Ley de Bouvier, page 353, se encuen-
tra definida esta máxima, y se hace referencia a algunas auto-
ridades, a saber: *"Expressio unius est exclusio alterius."*

La expresión de una cosa es la exclusión de otra. (Co. Litt., 210; Broom's Leg. Max., 650, 668; 3 Bingh. N. C., 85; 8 Scott N. R., 1013; 12 M. & W., 761; 16 id., 244; 2 Curt. C. C., 365; 6 Mass., 84; 11 Cush., 328; 98 Mass., 29; 117 id., 448; 3 Johns. Ch., 110; 5 Watts, 156; 59 Pa., 178; 84 Ala., 289; 11 Colo., 265; 35 Fed. Rep., 880; 74 id., 535; 104 U. S., 25; 4 Biss., 35, a los que pueden añadirse las Reglas Fundamentales de Interpretación de Beal, página 78, 1 Estatutos Federales Anotados LXIX y siguientes.)

El Dr. Broom observa, al comentar sobre la máxima "*Expressio unius est exclusio alterius,*" que es necesario tener gran ciudado al considerarla, pues no es de aplicación universal, según ha sido indicado por Lord Campbell en el caso de *Saunders* v. *Evans* (8 H. L. Cases, 729), pero esto depende de la intención del otorgante, según resulta de la faz del instrumento. (Máximas Legales de Broom, 653.) El mismo autor continúa expresándose, que a veces ocurre, que en un estatuto cuyo texto puede razonablemente comprender muchos casos diferentes, se hace referencia solamente a algunas de ellas de modo expreso, por vía de ejemplo simplemente y no en el sentido de excluir otras de igual naturaleza, y en tales casos esta regla corriente, no puede ser de aplicación. (Idem, 664.) Y llama la atención, además, de que los axiomas legales no son sino las conclusiones del sentido común que han sido formadas y aprobadas por la sabiduría de las edades. (Idem, 666.)

Al discutir esta máxima el Sr. Edward Beal, eminente autor inglés, expresa que el método de interpretación compendiado en ella, es uno que evidentemente requiere ser observado; y está conforme con las cortes en observar que "A menudo, es una ayuda de valor pero un factor peligroso para seguir en la interpretación de estatutos o documentos." La exclusión (*exclusio*) es frecuentemente el resultado de inadvertencia o accidente, y la máxima no debe ser aplicada cuando su aplicación con referencia a la materia en cuestión a que ha de ser aplicada, conduce a incompatibilidad e injus-

ticia.   Se cita el caso de *Lowe* v. *Darling & Son*, 2 K. B. 784.
(Véanse las Reglas Fundamentales de Interpretación de Ley
de Beal, pp. 78 y 79.)

Al comentar sobre la máxima "*Expressio unius est ex-
clusio alterius;*" aplicada a la interpretación de estatutos, se
ha declarado sabiamente por las Cortes Federales, que cuando
un estatuto establece una regla general, expresamente o por
la debida interpretación, y pasa a especificar ejemplos, debe
considerársele como ilustrativo más que completo, y la
máxima no es de aplicación.   (*Int. Com. Com.* v. *Balt. & Ohio
R. R. Co.*, 43 Fed. Rep., 58 y 59.)   Pero en tanto en cuanto
se hace referencia al artículo 1804 de nuestro Código Civil,
esto puede observarse de una simple lectura del propio esta-
tuto.   Todos los ejemplos enumerados en este último artículo
se encuentran expresados en los términos generales usados
en el anterior, pero no puede considerarse razonablemente
que constituyen una lista completa de tales casos.

Además, al aplicar así estrictamente la máxima "*Expres-
sio unius est exclusio alterius,*" el apelado solicita de este tri-
bunal que haga caso omiso de otras reglas más importantes
de interpretación así como de la intención de la legislatura,
según la misma se encuentra expresada en el propio Código
Civil.

Las autoridades están de acuerdo en que en la interpreta-
ción de cualquier estatuto, la significación que ha de darse al
mismo ha de ser una que produzca el efecto de la verdadera
intención y objeto real de la legislatura al ponerlo en vigor.
(*Minor* v. *Mechanics Bank* [1 Peters], 26 U. S., 84.)   Y
además, que las cortes siempre prefieren aquella interpreta-
ción de un estatuto que promueva el objeto de la legislación
en vez de una interpretación fundada en reglas puramente
artificiales.   (*Budd* v. *Budd,* 59 Fed. Rep., 741.)   Y además,
que la interpretación de un estatuto que destruya cualquiera
de sus manifiestos fines, no puede ser aceptada.   (*Erhardt* v.
*Schroeder,* 155 U. S., 134; *Lan Ow Bew* v. *United States,*
144 U. S., 56; *Kansas, etc., R. R. Co.* v. *Atty. Gen.,* 118 U. S.,

694; Opinión del Juez Taft, 20 Opiniones del Atty. Gen., U. S., 167.)

Por tanto es de presumirse que la legislatura española al poner en vigor el Código Civil y nuestra propia legislatura al adoptarlo y modificarlo, tuvo presente y fué su intención establecer justas reglas para determinar y poner en vigor las obligaciones entre las partes, ya surjan éstas sin convenio alguno como en el caso de cuasi-contratos, Título XVI, o en otra forma; y en el segundo capítulo de dicho Título XVI fué la intención legislativa establecer lo necesario para todos los casos de obligación que surjan de culpa o negligencia según se expresan en su título. Por consiguiente, ¿puede presumirse que fuera la intención del legislador hacer responsable a los dueños de animales por los perjuicios causados por ellos y al mismo tiempo relevarlo, de otra responsabilidad por los actos perjudiciales de su cochero o *chauffeur* al actuar en su servicio o bajo sus órdenos, o pudo ser la intención de un sabio legislador que el dueño de un automóvil que tenía el negocio regular de transportar carga y pasajeros entre dos pueblos en una empresa de vehículos, fuera responsable de la falta o negligencia de sus *chauffeurs,* pero que queda libre de toda responsabilidad por actos exactamente iguales cometidos por su *chauffeur* que guiaba su carro dedicado exclusivamente a su uso y recreo personal? ¿Pueden las cortes presumir que una legislatura sería tan tonta y tan injusta? No debe adoptarse ninguna interpretación de un estatuto que conduzca a un absurdo. Una de las primeras reglas de interpretación exige que ante todo, a los estatutos debe dárseles una interpretación razonable y no una que no esté fundada en alguna razón. (*Chesapeake & Ohio R. R. Co.* v. *Miller,* 114 U. S., 187.)

Indudablemente que toda ley debe interpretarse con arreglo a la intención legislativa que puede deducirse razonablemente del lenguaje. (*United States* v. *Goldenburg,* 168 U. S., 102; *United States* v. *Fisher,* 109 U. S., 145; *United States* v.

*Hogg,* 111 Fed. Rep., 294; 1 Federal Statutes Annotated XXIV and XXV.)

Se alega además que la responsabilidad del que causa el daño con arreglo a los artículos 1803 y 1804 participa de la naturaleza de un castigo; esto es claramente erróneo, pues una mera lectura del estatuto, especialmente a la luz de la jurisprudencia americana, demostrará que el remedio es una compensación por los perjuicios sufridos y nada más. Se ha alegado singularmente que los artículos del Código Civil citado enumeran todos los casos en que surge la responsabilidad por los actos u omisiones de una tercera persona, y por el hecho de no mencionarse los automóviles, estos casos como el presente quedan excluídos a menos que dichos automóviles se usen por una empresa que haga viajes de alquiler. Puesto que el estatuto fué primitivamente aprobado antes de que los automóviles fueran inventados, es casi imposible esperar que se haya hecho mención especialmente de los mismos en la ley.

Y nuestra Corte Suprema, nunca anteriormente ha dado una interpretación tan limitada a la ley con respecto a agravios o a estos estatutos aunque a menudo ha tenido que considerarlos. El Juez Asociado Sr. del Toro, en el caso de Díaz citado en otra parte de esta opinión, expresa que aunque el artículo 1803 del Código Civil Revisado, que es el estatuto que tenemos en vigor actualmente, es el mismo artículo 1902 del Código Civil Español, sin embargo, debido al cambio político que ha sufrido la isla, el establecimiento del nuevo sistema penal que omitió todo lo referente al ejercicio de acciones civiles provenientes de actos criminales, habiéndose incluído las mismas anteriormente en dicho Código, las disposiciones de dicho artículo 1803 tenían, y aún tienen, un alcance mayor en su aplicación, y suministran la base para el ejercicio de las acciones civiles provenientes de la cuasiculpa y negligencia criminal. El ilustrado juez reconoce en esta opinión el hecho bien conocido, que por el cambio de

soberanía y adopción de nuestro actual Código Penal y Código de Enjuiciamiento Criminal, el método español de conceder indemnizaciones por culpa o negligencia fué enteramente cambiado y la ley americana con respecto a agravios se adoptó necesariamente. Con referencia a este punto, la corte estuvo conforme con el ponente según antes se había indicado anteriormente en la opinión de la corte, que fué emitida por el Juez Asociado Sr. Wolf, en el caso de *Zalduondo* v. *Sánchez,* 15 D. P. R., 231. Desde la adopción del sistema americano de jurisprudencia criminal en 1902, los métodos españoles han sido cambiados y los remedios por agravios se conceden de acuerdo con la jurisprudencia americana. Los principios fundamentales de los dos sistemas son, sin embargo, los mismos, según se ha expresado en las grandes obras de Cooley, Zedgwick, Southerland y otros eminentes escritores, al tratar de daños y perjuicios, y en los artículos 1803 y 1804 del actual Código Civil de Puerto Rico. (3 Opiniones del Attorney General de Puerto Rico, p. 600.) Pero si la ciencia de la jurisprudencia ha de progresar en esta isla, y la administración de justicia facilitarse y mejorarse, marchando en pos del progreso de la edad, será por medio del esfuerzo en armonizar nuestras leyes según las hemos heredado de la Península con el grande y culto sistema predominante en la America del Norte. Es imperativo el dar una interpretación liberal a nuestras leyes; el progreso hace esto necesario, y la justicia lo pide de las manos de nuestra Corte Suprema.

Pero pasemos a hacer un examen de los errores señalados específicamente por el apelante, que se cometieron durante el juicio de este caso. Son 8 en número y pueden ser considerados por series.

El *primer* error alegado se refiere a eliminación de pruebas. El abogado del demandante preguntó al testigo Rufino Arroyo si había visto alguna vez, algún automóvil correr en el sentido y forma que venía corriendo el automóvil del demandado, dirigiéndose de un lado a otro de la carretera.

Después que el testigo dió sus contestaciones, el abogado del demandado presentó una moción para que se eliminara del récord las preguntas y contestaciones dadas, a lo que accedió la corte.  Esta resolución era procedente, puesto que no era pertinente a la cuestión, lo que el testigo había visto hacer a otros carros y ya había descrito la forma en que corría el automóvil que ha sido objeto de la denuncia, habiendo quedado en los autos esta parte de su declaración.

El *segundo* error que ha sido especificado por el apelante hizo referencia a la no admisión de la declaración de dos testigos, Simón Carlo y Eduardo Riera, Jr., que fueron presentados para impugnar la veracidad de la declaración del testigo Agustín Fábregas, presentado por el demandante. Desde luego que una parte no tiene derecho a impugnar la veracidad de su propio testigo.  Alega el apelante que el testigo fué llamado por ambas partes, demandante y demandada, pero no hay nada en los autos que muestre esto y si lo hubiera, el testigo Fábregas no fué llamado por el demandado y debe ser considerado como testigo del demandante.  La resolución de esta corte sobre este punto fué correcta.

El *tercer* error alegado hace referencia a la negativa de la corte a admitir en evidencia una carta del Dr. Lange, en la que hacía un relato al juez municipal del examen que había hecho de las heridas del demandante.  Esta carta aparecía en los autos de una causa criminal que se siguió contra el *chauffeur* Juan Gonce, por infracción de las leyes de seguridad pública.  La carta no había sido jurada pero su autor pudo haber declarado con respecto a su contenido si hubiera estado presente en la corte.  De acuerdo con nuestra Ley de Evidencia, artículo 123, hay tres modos de tomar declaración a los testigos, a saber: 1°., por *affidavit* o declaración jurada; 2°., por deposición, y 3°., por examen oral.  A ningún testigo se le permite declarar por medio de carta o sin haber prestado juramento.  Puesto que la evidencia rechazada no estaba autorizada por la ley, la acción tomada por la corte a no admitirla fué correcta.

El *cuarto* error alegado por el abogado del apelante se refiere a la negativa de la corte sentenciadora a permitir al testigo a Montalvo, ex-juez municipal, que explicara la razón legal que tuvo para absolver al *chauffeur* Juan Gonce del delito que se le imputa por infringir la ley referente a la salud y seguridad pública. El juez sentenciador debidamente resolvió que ni admitiría prueba del demandado relativa de haber sido absuelto el *chauffeur,* ni del demandante para explicar la razón de su absolución. Esto era enteramente inmaterial e impertinente a las cuestiones envueltas en este caso civil.

El *quinto* error que ha sido alegado no se ha presentado en forma tal que pueda ser considerado por este tribunal, puesto que parece que la corte sentenciadora no dictó orden alguna con respecto a la cuestión que ha sido indicada.

El *sexto* error especificado es más importante que cualquiera de los anteriores. Se refiere a que la corte sentenciadora cometió error al expresar en su opinión que la demanda que se presentó se fundó en los artículos 1803 y 1804, párrafo 4°. del Código Civil. Esta fué la teoría sustentada en la sentencia dictada por el juez de distrito. Y si tomamos en consideración solamente el segundo párrafo de la demanda, resultará justificada esta deducción. Pero debemos tomar en consideración toda la demanda, y si alguna parte o párrafo de la misma está eliminado o no sostenido por la prueba con relación al mismo y quedan alegaciones suficientes en otras partes de la demanda que justifiquen una sentencia a favor del demandante, y queda demostrado por la prueba, constituye error ·dictar una sentencia contra él porque deje de probar alguna simple alegación que pueda ser considerada como superflua. Según la opinión que tengo de la ley sobre perjuicios según rige en Puerto Rico, el principio enunciado en el artículo 1803 del Código Civil y que se encuentra más completamente determinado e ilustrado en los artículos siguientes, está completamente en armonía con la jurisprudencia americana. Debemos, por tanto, examinar las autori-

dades sobre esta materia no solamente en la ley española según la encontramos expresada por los grandes comentaristas y la Corte Suprema de Madrid, sino también las obras de Cooley, Southerland y otros eminentes tratadistas, así como las Decisiones de las Cortes Americanas.

No hay doctrina mejor establecida que la de *respondeat superior* o sea que el principal es responsable por la negligencia de su empleado, quien, encontrándose en el desempeño de su negocio como tal empleado, causa daño a una tercera persona. Toda persona que pretende beneficiarse por los actos ejecutados por otra persona en beneficio suyo, debe ser responsable de todos los daños que, como consecuencia, puedan sufrir otras personas inocentes. La demanda contenía alegaciones suficientes, y la evidencia digna de crédito que aparece en los autos es suficiente para justificar el veredicto a favor del demandante por alguna cantidad, por pequeña que sea, y a mi juicio, una sentencia en sentido contrario sería errónea. (Máximas Legales de Broom, 843; 34 Cyc., 1673 y siguientes.)

El *séptimo* error alegado hace referencia a haber la corte dictado sentencia en contra del demandante por la insuficiencia de la prueba. No puede existir duda alguna de que el demandante caminaba legalmente por la carretera y que fué cogido por un automóvil que pertenecía al demandado y guiado por su *chauffeur*, así como que sufrió heridas y contusiones que le hicieron ingresar en el hospital y permanecer allí por más de tres semanas. Estos hechos no pueden ponerse en duda por el juez sentenciador. La declaración del testigo Agustín Fábregas, con respecto a la cual dicho juez expresa que le merece entero crédito, es como sigue:

A preguntas del demandante, dice: "que es mecánico, que reside en Mayagüez; que el 19 de junio de 1910 estaba en Mayagüez pero fuí a San Germán a buscar el automóvil de Llavina para componerlo, llamado por el mismo señor Llavina, y formalicé con él un convenio sobre la composición del automóvil, y me hice cargo del automóvil al entregarlo al taller; el automovil vino a Mayagüez dirigido por el que

era *chauffeur* de él, Gonce, el nombre no recuerdo, pero es hijo de Don Pablo Gonce, un hombre joven; creo que, desde el momento que llevaba el automóvil, lo autorizó el señor Llavina; no me consta si en esa fecha el señor Gonce estaba colocado con el señor Llavina, y cuando yo llegué no estaba allí, y lo mandaron a buscar, y a los pocos momentos vino ese muchacho (Gonce). La persona con quién yo hablé para la composición del automóvil y fuí a San Germán llamado fué con el señor Llavina, y la persona que trajo el automóvil a Mayagüez y lo manejó ese día, fué Gonce. No hice contrato con el señor Llavina para arreglarlo, porque el mismo señor no sabía lo que había de hacerse.''

Al demandado: ''como el automóvil estaba en malas condiciones, yo iba con el mío a una distancia de un kilómetro, por si acaso sucedía algo por el camino. El automóvil de Llavina estaba en pésimas condiciones, venía para Mayagüez con el diferenciador roto, sin caja ni tapamáquina; no tenía capota, por no traer caja; venía el chasis con la máquina; no traía cojines; el automóvil tenía treinta caballos y cuatro cilindros; desarrollaba poca velocidad; durante el camino, mientras yo estuve detrás de él, nunca llegó a doce kilómetros, estuvimos una hora de San Germán a Mayagüez; el *chauffeur* venía en buena condición, normalmente; no venía borracho; traía el automóvil bien dirigido, durante yo lo ví; en las curvas y cuando se aproximaban personas tocaba la bocina; cuando estaba a medio kilómetro, siempre oí la bocina.''

Al honorable juez, dijo: ''el automóvil estaba en pésimo estado, puesto que lo que mueve la rueda estaba roto; pero a pesar de eso podía correr, pero si hubiera hecho un esfuerzo para andar cuatro o cinco millas más se hubiera quedado en el camino; la máquina estaba en condiciones y se podía gobernar el automóvil, y no había peligro de que el automóvil no obedeciera al *chauffeur;* se podía gobernar; en la parte del gobierno estaba en perfecto estado.''

Contestando al demandante, dice: ''dije que ese automóvil había salvado la distancia desde San Germán a Mayagüez en una hora, y la distancia es de quince millas o veinte kilómetros, y estando en ese pésimo estado salvó la distancia en una hora. El salió primero de San Germán, y lo estuve mirando hasta que llegó a la hacienda Estebanía; allí le perdí de vista porque tuve que parar para arreglar un tornillo de mi automóvil y ya no lo ví hasta cuando sucedió lo occurrido, y no puedo decir lo que en ese trayecto venía haciendo el automóvil por el camino. La hacienda Estebanía está a bastante distancia del sitio donde ocurrió el accidente, puesto que dicha hacienda debe estar en el kilómetro cinco o cinco y medio y el hecho ocurrió

creo que no llegaba al uno; durante esos cinco kilometros yo no ví a Gonce y cuando llegué a la Cuesta de las Piedras, ya el hecho había ocurrido.''

Contestando al demandado, dice: ''desde San Germán a la hacienda Estebanía, el automóvil venía más o menos a doce kilómetros, y quizás más, en sitios rectos; siempre tomaba su derecha; guardaba todas las reglas de la conducción; de la hacienda Estebanía en adelante venía con menos velocidad que antes por las curvas; no puedo decirle a qué distancia más o menos se encontraba mi automóvil del otro carro cuando ocurrió el accidente, porque no sé cuando ocurrió, porque yo estuve como dos minutos parado en la Estebanía y cuando seguí me encontré el automóvil parado a la derecha, en la cuneta; allí encontré al señor Andrés Méndez con otros señores; y habían estropeado, me parece que era éste (señalando al demandante), lo llevé a la sala de socorros, y estaba a la izquierda del que gobierna el automóvil; éste traía cubrelodo; el cubrelodo había recibido alguna huella, el de la izquierda; no en el cubrelodo de la parte derecha.''

Al honorable juez, dice: ''que acostumbra viajar entre Mayagüez y San Germán en automóvil cada momento, y emplea como promedio de tiempo alrededor de media hora o treinta y cinco minutos; eso andando a lo que marca la Ley. Si uno quiere se llega a tres cuartos de hora, pero por término medio, corriendo a razón de veinte millas, viene a resultar así.''

Contestando al demandante, dice: ''cuando llegué al sitio de la ocurrencia, conduje al herido, pero el choque del automóvil ya había pasado; estaba allí Juan Gonce y Pastor Vélez estaba sostenido entre dos señores a la izquierda del que maneja el automóvil; pero el accidente sucedió al lado derecho de la carretera viniendo de San Germán para Mayagüez.''

Contestando al demandado: ''el automóvil estaba al lado derecho de la carretera; pero Pastor Vélez en el suelo estaba al lado izquierdo del que maneja el automóvil; las ruedas derechas del automóvil estaban, en lo que tendría que ser cuneta; el automóvil se tiró en la cuneta y Pastor Vélez estaba a la izquierda.'' Tales fueron las declaraciones.

La prueba suministrada y recibida como digna de crédito fué por consiguiente suficiente con arreglo a la jurisprudencia de Puerto Rico, que procede de fuentes así españolas como americanas, para justificar la sentencia a favor del demandante por alguna cantidad; y a mi juicio tal sentencia debió haberse dictado.

El *octavo* error señalado se refiere a la negativa de la corte, negándose a conceder un nuevo juicio, que mediante moción solicitó el demandante y que estaba sostenida por declaraciones juradas. Los fundamentos de la moción de nuevo juicio que se alegaron son los siguientes:

1°. Accidente o sorpresa que la ordinaria prudencia no hubiera podido prevenir.

2°. Descubrimiento de nuevas pruebas, importantes para el solicitante.

3°. Insuficiencia de la prueba para justificar la sentencia o decisión, o que ésta fuera contraria a la ley.

4°. Error de derecho cometido en el juicio y al cual opuso excepción la parte solicitante.

Estos diferentes fundamentos de la moción que se presentó para el nuevo juicio se fundan en el artículo 221 del Código de Enjuiciamiento Civil, el que en tanto en cuanto es de aplicación, dice lo siguiente:

"Artículo 221.—La anterior sentencia o cualquier otra decisión podrá ser anulada, y mediante solicitud de la parte agraviada, concederse un nuevo juicio, por cualquiera de las siguientes causas siempre que esencialmente afecten a los derechos substanciales de dicha parte * * *.

"2. Accidente o sorpresa que la ordinaria prudencia no hubiere podido prevenir.

"3. Descubrimiento de nuevas pruebas que, sean importantes para la parte solicitante, las cuales a pesar de razonables diligencias, no pudo descubrir y presentar en el juicio * * *.

"5. Insuficiencia de la prueba para justificar la sentencia a decisión, o que ésta fuere contraria a la ley.

"6. Error de derecho, cometido en el juicio, y al cual opuso excepción la parte solicitante."

El primer fundamento de esta moción se funda en el hecho de estar ausente el Dr. Lange en los Estados Unidos. La declaración jurada del abogado del demandante José Ramón Freyre, Esq., expresa que sabía que se encontraba ausente de la isla el testigo el día anterior al juicio. Siendo esto así, debió haber solicitado la suspensión del mismo y

haber alegado su sorpresa como fundamento para tal orden, y no debió haberse sometido a las consecuencias de un juicio y luego recurrir a la presentación de una moción de nuevo juicio para impedir el resultado de una sentencia contraria. La declaración jurada no revela tal accidente o sorpresa a que hace referencia el estatuto.

Con respecto a las nuevas pruebas descubiertas en que se funda la moción, y las declaraciones de Carlo y Riera en apoyo de la petición, debo expresar que son insuficientes. No se ha mostrado diligencia alguna por parte del demandante para conseguir esta prueba con anterioridad al juicio; y además aparece de los autos que ambos testigos comparecieron a la corte y fueron presentados por el demandante para probar otros hechos que consideró esenciales a su caso, cuyos testigos fueron rechazados. Sus declaraciones en cuanto a los puntos aludidos en sus *affidavits*, no fueron ofrecidas ni existe nada que demuestre que el demandante no sabía entonces que estaban en condiciones de declarar sobre el particular; ni siquiera se ha mostrado que fueron interrogados con respecto a ello. Resulta una carencia completa de diligencia, cuando debió haberse mostrado de modo afirmativo que se hicieron tales gestiones.

"Las declaraciones juradas deben mostrar que la parte empleó razonable diligencia para descubrir y presentar la prueba en el juicio anterior." (*Stoakes* v. *Monroe,* 36 Cal., 388.)

"No debe simplemente existir una alegación sino la prueba de la diligencia en descubrir la evidencia y presentarla en el juicio." (*Jacks* v. *Cooks,* 6 Cal., 165; *Weimer* v. *Lowery,* 11 Cal., 113; *Klockenbaum* v. *Pierson,* 22 Cal., 164; *People* v. *Miller,* 33 Cal., 102; *Jones* v. *Jones,* 38 Cal., 585; *Butler* v. *Vassault,* 40 Cal., 76; *Jones* v. *Singleton,* 45 Cal., 92; *Moran* v. *Abbey,* 63 Cal., 56. Que se hicieron las diligencias necesarias. Véase *Von Glahn* v. *Brennan,* 81 Cal., 261; *People* v. *Ching Ring Chang,* 74 Cal., 389; *Ross* v. *Sedgwick,* 69 Cal., 247; *People* v. *Sutton,* 73 Cal., 243; *People* v. *Howard,* 74 Cal., 547; *People* v. *Urquidas,* 96 Cal., 239; *Heintz* v. *Cooper,* 104 Cal., 668; *Oberlander* v. *Fixe & Co.,* 129 Cal., 690; también de nues-

tra corte, *People* v. *Goitía*, 5 P. R. R., 249; *People* v. *Milán*, 7 Dec.
de P. R., 455; *People* v. *Díaz* (a) *Martillo*, 5 P. R. R., 415.)

En cuanto a la insuficiencia de la prueba para justificar
una sentencia en contra del demandante, solamente debo ex-
presar que la mera falta de evidencia para probar las alega-
ciones esenciales de la demanda, es suficiente para justificar
una sentencia a favor del demandado. En tanto en cuanto
se hace referencia a la negligencia contributoria del deman-
dante, ésta ni se alegó como defensa ni se trató de probar.
La obligación de probar hechos suficientes para establecer su
caso, incumbe siempre al demandante, y el demandado no
necesita presentar prueba hasta que esto se haga. En el
presente caso parece que el demandado se fundó en la falta
de prueba del demandante y en cuanto a este particular estuvo
apoyado por la corte sentenciadora. (Ley de Evidencia, de
P. R., art. 108.)

Pero debemos preguntar además, ¿fué la sentencia con-
traria a la ley según se expresa en el último apartado del 3er.
párrafo de la moción?

Según ya hemos dicho, creo que la sentencia estaba sujeta
a esta objeción y debió haberse concedido un nuevo juicio por
este fundamento.

Según ha sido alegado por el abogado del demandante, el
último párrafo del artículo 1804 del Código Civil, dispone la
siguiente defensa contra la negligencia que se alegue y pruebe
de acuerdo con dicho artículo, a saber:

"La responsabilidad de que trata este artículo cesará r r  les
personas en él mencionadas prueben que emplearon toda la diligen-
cia de un buen padre de familia para prevenir el daño."

Esta defensa no está sostenida por la prueba y  se ha
tratado de hacer alegación alguna en apoyo de la  posi-
ción. No existe nada en la ley, sin embargo, que de  ro
que el objeto fué que ésta fuera la única defensa que podría
presentarse en acciones por daños o agravios.  de
dante por tanto no puede beneficiarse con esta

Pero se alegaron y probaron hechos suficientes por medio de una preponderancia de evidencia digna de crédito que fué presentada durante el juicio en apoyo de la sentencia a favor del demandante, si no por la suma reclamada, por alguna cantidad determinada que creo debió haberse determinado y fijado por la corte.

El último fundamento alegado en apoyo de la concesión del nuevo juicio es, que la corte cometió varios errores de derecho durante el juicio según se demuestra por la gran corriente de autoridades de la jurisprudencia americana. El abogado del apelado se conforma en contestar expresando que estas autoridades son de aplicación en los estados en tanto han sido enunciadas, pero que no son en Puerto Rico, en donde nos regimos por nuestros propios estatutos y que este caso se funda en los artículos 1803 y 1804 del Código Civil, sin que sea necesario tomar en consideración las leyes sobre sentencias de otros estados. Con respecto a este particular tal parecer del abogado encuentra apoyo en la opinión de la mayoría de esta corte.

Esta no es la opinión que tengo de la ley sobre daños o agravios, según hasta ahora ha sido aplicada por las cortes de esta isla. En casos anteriores hemos acudido constante y consecuentemente a la ley americana al resolver casos en acciones *ex delictu*. Creo que tal proceder por parte de nosotros está justificado por principios sólidos de ley y puede hacerse referencia en general a muchos casos idénticos en los que hemos citado autoridades del continente americano, a saber: *Moreno* v. *Martínez,* 14 D. P. R., 383; *Vargas* v. *Monroig,* 15 D. P. R., 27; *Pérez* v. *Yabucoa Sugar Co.,* 15 D. P. R., 214; *Zalduondo* v. *Sánchez,* 15 D. P. R., 231; *Marrero* v. *López,* 14 D. P. R., 766; *Díaz* v. *San Juan Light and Transit Co.,* 17 D. P. R., 69, y muchos otros que pueden verse fácilmente. En el caso de *Díaz* v. *San Juan Light and Transit Co.,* que acaba de citarse, el Juez Asociado Sr. del Toro, que emitió la opinión del tribunal, discute ampliamente la cuestión de ac-

ciones *ex delictu,* y especialmente la aplicación de los artículos
1803 y 1804 de nuestro Código Civil. Trata dicho juez de la
ley según existía en casos de daños personales en tiempo de
España, y desde el cambio de soberanía, citando numerosas
autoridades españolas y americanas y demostrando que con
arreglo a nuestro actual sistema tenemos necesidad de adop-
tar la jurisprudencia americana, aun cuando los principios
fundamentales de ambos sistemas son iguales. En ese caso se
ha hecho una acabada y completa discusión de los artículos ci-
tados de nuestro Código Civil, expresándose claramente en la
opinión en qué casos es que puede obtenerse una indemniza-
ción con arreglo a nuestros estatutos por lesiones personales.
Al resolver el presente caso, debió haber servido de guía la
opinión emitida en el caso de Díaz.

El abogado del demandante en la corte inferior no parece
creer, como tampoco yo creo, como cuestión de derecho, que
para establecer la responsabilidad civil del demandado debe
probarse el hecho de que él era el dueño de una empresa de
automóviles. Es bastante con que se probara en el juicio que
el automóvil que causó las lesiones era de él; y lo conducía
el *chauffeur* o empleado del demandado, mientras dicho *chauf-
feur* actuaba bajo las órdenes del dueño del automóvil, cuando
lo traía al taller del mecánico Agustín Fábregas para hacerle
algunas reparaciones, de acuerdo con el convenio hecho entre
dicho mecánico y el dueño del automóvil, y que el *chauffeur*
encargado de él, lo conducía por la carretera pública en forma
negligente y haciendo caso omiso de la propiedad y vida de
cualquier persona que pasara por el camino; no habiendo el
demandante contribuído de modo alguno al perjuicio que se
le causó.

Las sentencias americanas encuentran apoyo también en
la de los demás países. También se ha resuelto por una corte
canadiense, que cuando alguna persona sufre alguna pérdida
o perjuicio ocasionado por un vehículo de motor en un camino
público, la obligación de probar que tal pérdida o perjuicio
no se originó por la negligencia o conducta indebida del dueño

o conductor del vehículo de motor, incumbe al dueño o con-
ductor de dicho vehículo.    (Cita en el caso de *Mattei* v. *Gillies,*
Ont. Div. Court, 23 April, 1908; 16 Ont. L. Rep., 558.)

Continúa dicha corte expresándose como sigue: ''Cuando
en una acción seguida contra el dueño de un automóvil para
obtener una indemnización por daños causados al demandante
por haber sido arrollado por la máquina, aparece que el *chauf-*
*feur* del demandado tenía permiso para usar el carro de su
principal por algunos minutos para llevar algunas cosas a la
casa de otro empleado, y a petición de las hijas de este último,
las llevó a dar un paseo, y al así hacerlo cogió y causó las
lesiones al demandante; la declaración del jurado de que el
*chauffeur* actuaba dentro de los límites generales de su empleo
cuando ocurrió el accidente y que el demandado no probó que
el accidente no ocurrió debido a la negligencia del *chauffeur,*
está sostenida dicha declaración de modo suficiente por la
prueba en vista del estatuto que regula la velocidad y la forma
en que han de conducirse los vehículos de motor, haciendo res-
ponsable al dueño por cualquier violación de la ley e imponién-
dole la obligación de relevarse de responsabilidad por un acci-
dente ocasionado por la máquina.''   Idem.   Parece que esta
sentencia que impone la obligación de probar al dueño del
carro que ocasione las lesiones, fué dictada con arreglo a un
estatuto especial que cambiaba de tal modo la regla general
de que incumbe al demandante probar todo su caso.   Pero
esa cuestión no altera el principio general de *respondeat*
*superior* que se encuentra apoyado por la sentencia de la
corte canadiense.

Se ha resuelto además por una corte canadiense que el
dueño es responsable por la negligencia del conductor de un
carro de motor que, aunque no esté empleado con el dueño,
lo tenga bajo su gobierno.   (*Perkins* v. *Stead*, 23 Times L.
Rep., 433.)   Estos casos canadienses han sido citados tomán-
dolos de otros, pues los tomos en que se encuentran las deci-
siones originales, no son accesibles en esta isla.

En un número de recientes casos americanos se ha resuelto

que los dueños de automóviles son responsables por los actos negligentes de sus *chauffeurs* o agentes, aunque en estos casos no se discutió que los *chauffeurs* o agentes estuvieran desempañando servicios dentro del límite de su empleo. (*New York Transp. Co.* v. *Garcido,* 157 Fed. Rep., 621; 85 C. C. A., 285; *Campbell* v. *Drehor* [Ky., 1908], 110 S. W. Rep., 355; *Seaman* v. *Mott* [Sup. Ct. App. Div.], 110 N. Y. Supp., 1040; *Rochester* v. *Bull,* 78 S. Car., 249; 58 S. E. Rep., 766; *Otto- meier* v. *Hornburg* [Wash., 1908], 97 Pac. Rep., 235. Véase también *Strand* v. *Grinnell Automobile Garage Co.* [Iowa, 1907], 113 N. W. Rep., 488.)

En el caso de *Cunningham* v. *Castle* (Sup. Ct. App Div.), 111 N. Y. Supp., 1057, que es un caso muy semejante al presente, se dijo: ''Si ocurriera un accidente mientras el *chauffeur* llevaba el automóvil del garaje al taller de mecánica para hacerle reparaciones, la falta de conocimiento por parte del dueño no afectaría su responsabilidad, porque el acto del *chauffeur* lo ejecutaría mientras realizaba un negocio del principal y dentro del límite de su empleo como tal *chauffeur.*''

En una acción sobre reclamación de daños y perjuicios por haber sido arrollado por un automóvil que se alega era guiado por el *chauffeur* del demandado, se resolvió que la prueba presentada con el objeto de demostrar que el demandado era el dueño de la máquina y que el *chauffeur* estaba empleado por él para manejarlo, era suficiente para establecer un caso *prima facie* que demuestre que el *chauffeur* se encontraba desempeñando servicios dentro del límite de su empleo, al ocurrir el accidente. (*Stewarts* v. *Baruch,* 103 N. Y. App. Div., 577; 93 N. Y. Supp., 161.)

En otro caso de Nueva York, la corte se expresó como sigue: ''Que el automóvil marchaba a razón de 3 a 5 millas por hora es un hecho que aparece sustancialmente sin discusión alguna y puesto que el conductor del automóvil según el oficio que desempeñaba, debió haber observado perfectamente lo que había delante de él, y sin disputa alguna así ocurrió, la única deducción razonable que puede hacerse del hecho de

haber ocurrido tal accidente, es que él, bien por descuido o por negligencia continuó en su marcha. Seguramente que la ordinaria prudencia exigía que parara o que desviara su marcha hacia la parte que se encontraba libre a su derecha, en cuyo caso se hubiera evitado el choque.'' (*Caesar* v. *Fifth Ave. Coach Co.*, 45 Miscl. N. Y. Rep., 331.) Este es muy parecido al presente caso.

En el caso de *Hennessey* v. *Taylor*, resuelto por la Corte Suprema de Massachusetts el día 4 de diciembre de 1905, anotado en 189 Mass., 583, se dijo que: ''Cuando un viandante va legalmente por el camino público, éste no está obligado a estar mirando o escuchando constantemente para asegurarse de si algún automóvil se acerca, con arreglo a la Ley Penal que castiga la falta de que se presume que ha habido negligencia por su parte si recibe algún daño; en otras palabras, los viandantes tienen algunos derechos en Massachusetts, que deben ser respetados por los *chauffeurs*. ¿No lo tienen en esta isla?

Las cortes han ido todavía más lejos en casos de esta clase. En un número de sentencias se ha sostenido el derecho que existe para exigir indemnización por daños y perjuicios con motivo de dolor y sufrimiento corporal ocasionado únicamente por susto o espanto, producido por un acto negligente. Se ha resuelto, sin embargo, que igual que en otros casos de negligencia, el daño debe ser el resultado inmediato del acto negligente. (*Lehigh, etc., H. R. Ry. Co.* v. *Marchant*, 84 Fed. Rep., 870; 55 U. S. App., 427; 28 C. C. A., 544; *Haile's Curator* v. *Texas, etc., P. Ry. Co.*, 60 Fed. Rep., 557; 23 U. S. App., 80; 9 C. C. A., 134; 23 L. R. A., 774. Véase también *Sloane* v. *Southern California Ry. Co.*, 111 Cal., 668; 44 Pac. Rep., 320; 32 L. R. A., 193.)

En ocasiones las cortes han comentado sobre la filosofía con respeto a lesiones físicas como sigue:

''La parte moral y corporal funciona recíprocamente una sobre la otra. Una lesión o enfermedad corporal a veces produce otra mental. Una conmoción o perturbación mental

en casos proporciona un daño y enfermedad corporal espe-
cialmente del sistema nervioso.    ¿Cómo si el espanto fué la
consecuencia natural y fué producido y causado por la cir-
cunstancia del peligro y alarma en que la negligencia del
demandado colocó al demandante y dicho espanto produjo la
conmoción nerviosa y convulsiones y por consiguiente la en-
fermedad, cómo pudo la negligencia ser la causa próxima de
aquellas lesiones?''    (Véase a *Purcell* v. *St. Paul City R. Co.,*
48 Minn., 134; 50 N. W. Rep., 1038; 16 Lawyer's Rep. Anno-
tated, 203, que es uno de los principales casos en donde se
sostiene el derecho que tiene el demandante bajo circunstan-
cias como las del presente caso para exigir indemnización,
cuando la corte usó las palabras arriba citadas.)    La Corte
Suprema de California se expresa en ese sentido con respecto
a esta cuestión.    Dice lo siguiente:

"El dolor físico ha sido siempre considerado como un
elemento de daños y perjuicios por el cual puede concederse
indemnización.''    (*Malone* v. *Hawley,* 46 Cal., 409; *Fairchild*
v. *California Stage Co.,* 13 Cal., 599.) "El sufrimiento men-
tal acompañado de daño personal o dolor físico siempre es
objeto de indemnización.''    (*Malone* v. *Hawley,* 46 Cal., 409;
*Jones* v. *The Steamship Cortés,* 17 Cal., 487; 79 Am. Dec.,
142.)    Como regla general, los daños ocasionados por susto
o espanto que acompañan al daño físico constituyen una base
para establecer una reclamación por daños y perjuicios.
(*Master* v. *Warren,* 27 Conn., 293; *Segar* v. *Barkhamsted,* 22
Conn., 290.)    Aunque no se habló con extensión acerca de la
cuestión referente a sufrimiento moral en este caso, estas sen-
tencias se citan para demostrar que la consideración adop-
tada por la corte sentenciadora fué enteramente muy limitada.

Al apreciar los daños y perjuicios el demandante tiene
derecho a ser indemnizado por el tiempo razonable que haya
perdido con motivo del daño que alega.    La extensión y natu-
raleza del negocio o empleo del demandante y de su capacidad
física para ejecutar el trabajo en la fecha en que recibió el

daño puede mostrarse. (*Jordan* v. *Middlesex R. R. Co.,* 138 Mass., 425; *Wale* v. *Lercy,* 20 How., 34; 15 L. Ed., 813; *Saldaña* v. *Galveston, etc., Ry. Co.,* 43 Fed., 862.)

Algunas de las cortes han establecido la amplia doctrina de que el principal es responsable por daños ejemplares por los actos de sus dependientes, por perjudiciales que sean o sin que estén autorizados, cuando son ejecutados en el curso de su negocio ordinario, por el fundamento de que el principal es responsable por todos los actos así ejecutados por su dependiente; ocurre esto también tanto en el caso de que dichos actos estuvieran previamente autorizados o posteriormente rectificados por el principal. (*Mendlesohn* v. *Anaheim Lighter Co.,* 40 Cal., 657; *Wardrobe* v. *California Stage Co.,* 7 Cal., 119; 68 Am. Dec., 231.) Pero la cuestión de daños ejemplares no ha sido presentada en el caso sometido a nuestra consideración.

Si ocurrió el daño mientras el carro era conducido por el *chauffeur* en el ejercicio de su empleo, el dueño es responsable aunque el acto del *chauffeur* no fuera necesario para el cumplimiento de sus deberes. De igual modo y de conformidad con los casos que han sido resueltos, el dueño es responsable si el *chauffeur* obraba dentro de los límites de su empleo aunque iba conduciendo la máquina sin el conocimiento o consentimiento del dueño de la misma, en forma tal que no debía hacerlo, o faltando a las instrucciones que de él había recibido. La regla de *respondeat superior* ha sido establecida como sigue: "El principal en responsable por todos los daños que se ocasionen a una persona o propiedad por la negligencia de su empleado, si el acto que da por resultado el perjuicio se ejecutó mientras el empleado obraba dentro del límite de su empleo y en el servicio de su principal, aunque el acto no fuera necesario para la ejecución de sus deberes como tal empleado y no estuviera expresamente autorizado por el principal, o fuera conocido del mismo." (Ley sobre Vehículos de Motor por Berkeley Davids, del Colegio de Abogados del Distrito de Columbia, obra que ha sido reciente-

mente publicada por Edward Thompson Co., Northport, Long Island, N. Y., 1911.) Si el *chauffeur* ejecutaba el oficio para el cual había sido empleado al ocurrir el daño, el hecho de que no lo hiciera en la forma que era de esperarse no es esencial. (*Danforth* v. *Fisher,* 75 N. H., 111; 71 Atl., 535; 21 L. R. A. [N. S.], 93.)

De darse al estatuto la interpretación que trata de darle el abogado del apelado produciría un resultado manifiestamente injusto, que se ha sugerido que existe un defecto en la ley que debe ser corregida por la legislatura. Durante los catorce años que han transcurrido desde el cambio de soberanía de esta isla, este defecto jamás ha sido descubierto anteriormente. Es cierto que este defecto existe y ha existido en efecto desde la sentencia dictada en el día de ayer por este tribunal. Pero es necesario que ahora se corrija esta falta en la ley mediante acción legislativa. Según mi más humilde opinión, esto hubiera sido completamente innecesario si se hiciera una interpretación debida de los estatutos que ya tenemos en nuestros libros.

No puedo estar de acuerdo en que se prescinda de todo el caudal de sabiduría que se encuentra incorporado en las sentencias de nuestras cortes americanas y retroceder completamente al Código Civil y a los comentarios sobre el mismo hechos por las cortes de un país extranjero, según nos ha indicado el apelado que debemos hacer. Creo que en cuestiones de esta clase la jurisprudencia americana en cuanto a negligencia es completamente aplicable. Mantengo la opinión por humilde que ella sea, de que no es necesario para establecer la responsabilidad por daños y perjuicios en una acción civil mostrar que el demandado es el dueño de una empresa de automóviles o de vehículos; es bastante con que se demuestre que él es el dueño del automóvil qué causa el daño. En el presente caso el demandado admitió por medio de su abogado que el automóvil que causó las lesiones al demandante pertenecía al Sr. Llavina y era conducido por su *chauffeur* Juan Gonce.

Creo que las siguientes consideraciones hechas hace muchos años por esta corte deben aplicarse a este caso, a saber:

"Siempre nos inclinamos a aducir las doctrinas de la jurisprudencia de los Estados Unidos, cuando son aplicables a los problemas judiciales en los tribunales de esta isla, considerando las mismas más progresivas y como una evolución del sistema antiguo." (Opinión concurrente del Juez Asociado Sr. Sulzbacher, en el caso de *Luis Chevremont et al.,* demandantes y apelados, v. *El Pueblo de Puerto Rico,* demandado y apelante; sentencia dictada el día 23 de enero de 1903, 1 Castro, 445.)

E insisto en que debe adoptarse esta práctica aquí en vista de la opinión de la Corte Suprema de Puerto Rico de 15 de enero del 1909, emitida en el caso de *Francisco Vargas* v. *A. Monroig e Hijos,* en cuya opinión que fué redactada por el Juez Asociado Sr. Wolf, se estableció la siguiente doctrina que ha sido tomada en su totalidad de fuentes americanas, a saber:

"En los casos en que el demandado no haya presentado su prueba, y no exista negligencia contribuyente por parte del demandante, si éste prueba los hechos, tiene *prima facie,* el derecho a recobrar indemnización. Hay muchos casos en que se resuelve que aunque el demandante podría, ejercitando cautela, haber evitado el accidente, sin embargo, dicho demandante puede, a pesar de esto, ser indemnizado, si se prueba que el demandado pudo haber evitado el accidente ejercitando el debido cuidado. Si una persona hace determinada cosa en la forma conveniente, usual u ordinaria, y no hay motivo alguno para que pueda temer ningún peligro, no sería culpable de negligencia contribuyente, si, procediendo así, sufriere algún accidente. La causa inmediata del accidente, y no la remota o mediata, es la que debe tomarse en consideración." (*Vargas* v. *A. Monroig e Hijos,* 15 D. P. R., 27.)

Esta doctrina americana que fué enunciada por esta Corte Suprema en el caso ya citado, a veces es conocida en los Estados Unidos con el nombre de *doctrina del último recurso;* con respecto a la cual algunas sentencias han sido citadas en varios estados en una obra recientemente publicada, a la cual

ya hemos hecho referencia, titulada, Ley Sobre Vehículos de Motor.

En lo que a mí respecta, tal decisión o sentencia no puede encontrarse en las decisiones españolas. Si las autoridades americanas fueran suficientes en ese caso y en muchos otros, ¿por qué no han de ser tomadas en consideración en el presente caso?

En el estado en que se encuentra la jurisprudencia americana con respecto a este punto ha sido de tal modo discutido en toda su extensión, porque es uniforme, claro y bien establecido. Está además estrictamente de conformidad con la razón, y no puedo ver que exista nada en contra de la doctrina americana en las autoridades españolas. Solamente dando una interpretación enteramente limitada al artículo 1804 de nuestro Código Civil, que fué adoptado del Código Español, es que puede eliminarse en esta isla la doctrina de *respondeat superior*. No puedo aprobar que se haga esta omisión bajo tales insuficientes fundamentos.

Por tanto, de acuerdo con el estatuto de 12 de marzo de 1903, transformando esta corte de corte de casación en corte de apelación y con el fin de que se promueva la ley y la justicia, creo que es un deber sagrado de esta corte conceder un nuevo juicio en este caso y devolver el mismo a la corte inferior para que celebre otro juicio de acuerdo con los principios de ley determinados en esta opinión. La sentencia debió por consiguiente haber sido revocada ordenándose la celebración de un nuevo juicio.